IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

BENSON ROBERT NEAL, JR.,

Petitioner,

vs.

GARY SWARTHOUT,[1] Warden (A), California State Prison, Solano,

Respondent.

No. 2:06-cv-00797-JWS

MEMORANDUM DECISION

Petitioner Benson Robert Neal, Jr., a state prisoner appearing *pro se*, has filed a petition for habeas corpus relief under 28 U.S.C. § 2254. Neal is presently in the custody of the California Department of Corrections and Rehabilitation, incarcerated at the California State Prison, Solano. Respondent has answered, and Neal has replied.

## I. BACKGROUND/PRIOR PROCEEDING

In April 1983 Neal was convicted in the Stanislaus County Superior Court of first degree murder, burglary, and robbery. The trial court sentenced Neal to an indeterminate prison term of 25 years to life. Neal does not contest the validity of his conviction or sentence in these proceedings.

On May 5, 2005, Neal made his second appearance before the California Board of Prison Terms (now Board of Parole Hearings, hereinafter "Board"). The Board denied Neal parole for a

[1] Gary Swarthout, Warden (A), California State Prison, Solano, is substituted for D. K. Sisto, Warden, California State Prison, Solano. Fed. R. Civ. P. 25(d).

period of three years.  Neal timely sought a writ of habeas corpus in the Stanislaus Superior Court, which denied his petition in a reasoned decision.  A subsequent petition for habeas relief was summarily denied without opinion or citation to authority by the California Court of Appeal and the California Supreme Court summarily denied review on January 18, 2006.  Neal timely filed his petition for relief in this court on April 6, 2006.

On January 9, 2009, further action in this case was stayed pending the issuance of the mandate by the United States Court of Appeals for the Ninth Circuit in *Hayward v. Marshall*, 512 F.3d 536, *rehr'g en banc granted*, 527 F.3d 797 (9th Cir. 2008), Case No. 06-55392.  The Court of Appeals has rendered its decision in *Hayward*,[2] and the court now terminates its stay and decides the case.

## II.  ISSUES RAISED/DEFENSES

Neal raises two grounds for relief: (1) the Board's suitability hearing did not comply with the applicable California Penal Code and Code of Regulations in that the presiding commissioner was biased; and (2) his due process rights under the Fourteenth Amendment were violated because the denial of parole was based upon the nature of the crime, which is insufficient under the "some evidence" standard.  Respondent asserts no affirmative defenses.[3]

---

[2] *Hayward v. Marshall*, 603 F.3d 546 (9th Cir. 2010) (en banc).

[3] Rules—Section 2254 Cases, Rule 5(b).

## III. STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254(d), this court cannot grant relief unless the decision of the state court was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" at the time the state court renders its decision or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."[4] The Supreme Court has explained that "clearly established Federal law" in § 2254(d)(1) "refers to the holdings, as opposed to the dicta, of [the Supreme Court] as of the time of the relevant state-court decision."[5] The holding must also be intended to be binding upon the states; that is, the decision must be based upon constitutional grounds, not on the supervisory power of the Supreme Court over federal courts.[6] Thus, where holdings of the Supreme Court regarding the issue presented on habeas review are lacking, "it cannot be said that the state court 'unreasonabl[y] appli[ed] clearly established Federal law.'"[7] When a claim falls under the "unreasonable application" prong, a state court's application of Supreme Court precedent must be objectively unreasonable, not just incorrect or erroneous.[8] The Supreme Court has made clear

---

[4] 28 U.S.C. § 2254(d); *see Williams v. Taylor*, 529 U.S. 362, 404-06 (2000); *see also Lockyer v. Andrade*, 538 U.S. 63, 70-75 (2003) (explaining this standard).

[5] *Williams*, 529 U.S. at 412.

[6] *Early v. Packer*, 537 U.S. 3, 10 (2002).

[7] *Carey v. Musladin*, 549 U.S. 70, 77 (2006) (alterations by the Court); *see Wright v. Van Patten*, 552 U.S. 120, 127 (2008) (per curiam); *Kessee v. Mendoza-Powers*, 574 F.3d 675, 678-79 (9th Cir. 2009); *Moses v. Payne*, 555 F.3d 742, 753-54 (9th Cir. 2009) (explaining the difference between principles enunciated by the Supreme Court that are directly applicable to the case and principles that must be modified in order to be applied to the case; the former are clearly established precedent for purposes of § 2254(d)(1), the latter are not).

[8] *Wiggins v. Smith*, 539 U.S. 510, 520-21 (2003) (internal quotation marks and citations omitted).

that the objectively unreasonable standard is a substantially higher threshold than simply believing that the state court determination was incorrect.[9] "[A]bsent a specific constitutional violation, federal habeas corpus review of trial error is limited to whether the error 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'"[10] In a federal habeas proceeding, the standard under which this court must assess the prejudicial impact of constitutional error in a state court criminal proceeding is whether the error had a substantial and injurious effect or influence in determining the outcome.[11] Because state court judgments of conviction and sentence carry a presumption of finality and legality, Neal has the burden of showing by a preponderance of the evidence that he merits habeas relief.[12]

In applying this standard, this court reviews the last reasoned decision by the state court.[13] Under AEDPA, the state court's findings of fact are presumed to be correct unless the petitioner rebuts this presumption by clear and convincing evidence.[14] This presumption applies to state trial courts and appellate courts alike.[15]

---

[9] *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007).

[10] *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)).

[11] *Fry v. Pliler*, 551 U.S. 112, 121 (2007) (adopting the standard set forth in *Brecht v. Abrahamson*, 507 U.S. 619, 637-38 (1993)).

[12] *Silva v. Woodford*, 279 F.3d 825, 835 (9th Cir. 2002); *see Wood v. Bartholomew*, 516 U.S. 1, 8 (1995) (per curiam) (stating that a federal court cannot grant "habeas relief on the basis of little more than speculation with slight support").

[13] *Ylst v. Nunnemaker*, 501 U.S. 797, 804 (1991); *Robinson v. Ignacio*, 360 F.3d 1044, 1055 (9th Cir. 2004).

[14] 28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

[15] *Stevenson v. Lewis*, 384 F.3d 1069, 1072 (9th Cir. 2004).

IV. DISCUSSION

Ground 1: Participation of Presiding Commissioner Fisher.

Neal argues that because Presiding Commissioner Fisher had a crime victims' advocate background, she was necessarily biased in his case. Neal further contends that Presiding Commissioner Fisher's occupational background did not comply with the requirements of California Penal Code, § 5075.[16] Neal does not provide any factual support for what are, in essence, nothing more than conclusory statements. Neal has not carried his burden of proving by a preponderance of the evidence his entitlement to federal habeas relief on his first ground.

---

[16] The court notes that Cal. Penal Code § 5075, except for the statement that appointment and confirmation "shall reflect as nearly as possible a cross section of the racial, sexual, economic, and geographic features of the population of the state," does not specify the qualifications of the commissioners. Neal also refers to Cal. Code & Regs, tit. 15, § 2250, which provides:

> **§ 2250, Impartial Hearing Panel**.
>
> A prisoner is entitled to a hearing by an impartial panel. A prisoner may request the disqualification of a hearing panel member or a hearing panel member may disqualify himself.
>
> (a) Grounds for Disqualification. A hearing panel member shall disqualify himself in the following circumstances:
>
> (l) A close personal relationship exists between the hearing panel member and the prisoner or between their immediate families.
>
> (2) The hearing panel member was involved in a past incident with the prisoner which might cause him to be prejudiced against the prisoner; for example, the hearing panel member was responsible for the arrest of the prisoner or the prisoner has assaulted the hearing panel member or a member of the hearing panel member's family.
>
> (3) The hearing panel member is actually prejudiced against or biased in favor of the prisoner to the extent that he cannot make an objective decision.
>
> (b) Decision. The hearing panel shall make and document the decision on disqualification if the issue has been raised. Disqualification shall not occur solely because the hearing panel member knew the prisoner in the past or has made a decision in the past affecting the prisoner.

The record reflects that, although given the opportunity to do so, Neal did not object to the composition of the panel at the hearing. Docket 11-3, p. 11.

Ground 2: Denial not Supported by Some Evidence.

Neal argues that the Board's reliance on the immutable factors of the commitment offense and his criminal history were insufficient to constitute some evidence of unsuitability for parole, and the Board's reliance on the other factors were not permissible under state law. The Stanislaus County Superior Court, in denying Neal's petition, held:

> The court has read and considered the application, including the transcript of proceedings before the panel. The court has *also* researched the law on the issue of denying parole. A recent decision, In re John Dannenberg on Habeas Corpus (2005) 34 Cal.4th 1061 has been specifically considered.
>
> Although it appears from the record that Mr. Neal has made considerable·progress during his incarceration, the denial of parole was based on a combination of factors recited by the Board of Prison terms. The denial was within their discretion.[17]

In rendering its decision, the Board panel found:

> And Mr. Neal, the Panel reviewed all of the information received from the public and relied on the following circumstances in concluding that you're not yet suitable for parole and would pose unreasonable risk of danger to society or a threat to public safety if released from prison. Certainly, the commitment offense was one of the first things that we considered. This was the murder of Dixon (indiscernible) Flinders, I'm sorry. This was a situation where Mr. Neal and his crime partners had decided they were going to rob Mr. Flinders, who was apparently a drug dealer. They -- according to the Statement of Facts (inaudible) information that we have on hand, Mr. Neal suggested that they go to his apartment to pick up a gun that was apparently his stepbrother's gun and (inaudible) this crime. They also used a female crime partner in a wig to go to the door and get Mr. Flinders to open the door for them. This was an offense that was committed for a very trivial reason. This was -- apparently they were robbing him because they needed money for more marijuana, but certainly a callous offense. And after the -- after Mr. Flinders was murdered for no apparent reason, apparently when the door was opened, he was simply shot in the chest, which mortally wounded him and eventually he died of his wounds. After he was shot, his residence was ransacked and the robbery was completed. The murder of Mr. Flinders also didn't deter Mr. Neal from committing another offense and that would be the 1998 115, which resulted in the conviction for inmate possession of

[17] Docket 11-5, p. 2.

heroin.  Mr Neal does have a record of assaultive behavior.  He was convicted of manslaughter in 1973 and assault and battery in, I believe it was 1980.  He has an escalating pattern of criminal conduct.  His criminal behavior included possession of narcotics, robbery, burglary and the other two assaultive convictions that I spoke of already.  He certainly failed to profit from society's previous attempts to correct his criminality.  And that would include a prior prison term.  His unstable social history includes that criminal behavior, as well as substance abuse, most specifically, marijuana and heroin and also drug sales.  He has had only -- I'm sorry, he's had seven 115 disciplinary reports since his incarceration for this offense. The last two were back in 2000.  There was one on 6/27 for conduct and one on 7/10 for leaving work without permission.  The psychiatric evaluation, dated 4/20 -- 4/13/05 by Dr. Taylor is generally supportive.  He has parole plans.  He plans to live with his sister in Sacramento.  He doesn't have a job lined up at this point, but he does have job skills. He worked for his father's janitorial company prior to coming to prison and he said that it's his intention to seek work as a janitor.  The hearing Panel notes that in response to 3042 notices, the District Attorney of Stanislaus County had a representative at the hearing today, who spoke in opposition to a finding of suitability at this time.  The Panel finds that the prisoner needs to continue to participate in self-help, in order to cope with stress in a nondestructive manner.  Also, in order to continue to gain insight into the underlying factors that led, not only to this offense, but also his other criminal behavior and the behavior that continued after he was incarcerated.  The prisoner's gains are recent and he must demonstrate an ability to maintain those gains over an extended period of time.  And I'm referring not just to the most recent 115s, which were in the year 2000, but more specifically to the 1998 heroin trafficking 115 that resulted in the Sacramento case and the conviction of inmate in possession of heroin.  We do want to commend Mr. Neal for his participation in the FEMA courses that he completed in, I think at the end of '04 and ending in January '05, his participation in substance abuse programming and also for being disciplinary free since the two 115s in 2000.  However, currently the positive aspects of his behavior do not outweigh the factors of unsuitability.  In a separate decision, the hearing Panel finds that the prisoner has been convicted of murder and it is not reasonable to expect that parole would be granted at a hearing during the next three years.  The specific reasons for this finding are as follows:  First of all, (inaudible) his commitment offense, which was a very callous crime. This was a situation where there was absolutely no need for this man to be shot. It was a crime that was premeditated to the point of going to Mr. Neal's house or apartment to get a gun to take with them.  Mr. Flinders was apparently shot for no reason and then robbed. The motive for this crime was very trivial in relation to this offense.  The prisoner has a prior record of violent behavior, in that he was convicted in 1973 for manslaughter and again in 1980 for an assault and battery.  He also has an extensive history of criminality and misconduct.  He has a history of unsuitable relationships with others that include that criminal conduct, as well as substance abuse and drug sales.  And the prisoner has not yet completed the

> necessary programming, which is essential to his adjustment and needs time to gain that programming. And that would be in the area of continuing self help. And that's what we would recommend to you Mr. Neal, is that you continue to participate in any self-help that you're able to. If you are not able to get into programming in the institution, you can certainly do it on your own in your cell, checking out books from the library and simply bring back reports to the next Panel and show them what you have been doing. Also to remain disciplinary free. was -- this was an ugly crime and coming to prison and getting a conviction for being in possession of heroin certainly didn't help. So you need to get some distance from that and we need to be comfortable that if we give you the keys, that you won't revert back to the criminal behavior that you were engaging in, in the past. And that concludes the reading of the decision.[18]

In this case, this court "need only decide whether the California judicial decision approving the . . . decision rejecting parole was an 'unreasonable application' of the California 'some evidence' requirement, or 'was based on an unreasonable determination of the facts in light of the evidence.'"[19] Consequently, this court must canvas and apply California law to the facts in the record. Under California law "some evidence" of future dangerousness is a *sine qua non* for denial of parole.[20] As the Ninth Circuit noted:

> As a matter of California law, "the paramount consideration for both the Board [of Prison Terms] and the Governor under the governing statutes is whether the inmate currently poses a threat to public safety." (Footnote omitted) There must be "some evidence" of such a threat, and an aggravated offense "does not, in every case, provide evidence that the inmate is a current threat to public safety." (Footnote omitted). The prisoner's aggravated offense does not establish current dangerousness "unless the record also establishes that something in the prisoner's pre or post-incarceration history, or his or her current demeanor and mental state" supports the inference of dangerousness. (Footnote omitted.) Thus, in California, the offense of conviction may be considered, but the consideration

---

[18] Docket 11-4, pp. 23-28.

[19] *Hayward*, 603 F.3d at 563 (footnotes citing 28 U.S.C. § 2254(d) omitted).

[20] *In re Lawrence*, 190 P.3d 535, 549 (Cal. 2008); *In re Shaputis*, 190 P.3d 573, 582 (Cal. 2008).

> must address the determining factor, "a current threat to public safety." (Footnote omitted.)[21]

Under California law, "[t]he nature of the prisoner's offense, alone, can constitute a sufficient basis for denying parole."[22] The Board (or the Governor on review) must, however, "point to factors beyond the minimum elements of the crime for which the inmate was committed" that demonstrate the inmate will, at the time of the suitability hearing, present a danger to society if released.[23] The Board (or the Governor on review) "may credit evidence suggesting the inmate committed a greater degree of the offense than his or her conviction evidences."[24] "[T]he statutory and regulatory mandate to normally grant parole to life prisoners who have committed murder means that, particularly after these prisoners have served their suggested base terms, the underlying circumstances of the commitment offense alone rarely will provide a valid basis for denying parole when there is strong evidence of rehabilitation and no other evidence of current dangerousness."[25] Where, however, the record also contains evidence of other factors relevant to showing unsuitability for parole, the aggravating circumstances of the crime reliably may continue to predict current dangerousness even after many years of incarceration.[26]

---

[21] *Hayward*, 603 F.3d at 562 (omitted footnotes are pinpoint citations to *Lawrence*) (internal alteration in the original).

[22] *In re Rosenkrantz*, 59 P.3d 174, 222 (Cal. 2002).

[23] *In re Dannenberg*, 104 P.3d 783, 786-87, 802-803 (Cal. 2005); *see Rosenkrantz*.

[24] *Dannemberg*, 104 P.3d at 803 n.16 (citing *Rosenkrantz*, 59 P.3d at 219).

[25] *Lawrence*, 190 P.3d at 553.

[26] *See Shaputis*, 190 P.3d at 584-85.

The California Supreme Court has provided substantial guidance on the factors to be considered in applying these general principles.

> Title 15, section 2402 of the California Code of Regulations sets forth the factors to be considered by the Board in carrying out the mandate of the statutes.[FN13] This regulation is designed to guide the Board's assessment of whether the inmate poses "an unreasonable risk of danger to society if released from prison," and thus whether he or she is suitable for parole. (Regs., § 2402, subd. (a).)[FN14] The regulation also lists several circumstances relating to unsuitability for parole[FN15]—such as the heinous, atrocious, or cruel nature of the crime, or an unstable social background; and several circumstances relating to *suitability* for parole—such as an inmate's rehabilitative efforts, demonstration of remorse, and the mitigating circumstances of the crime.[FN16] (Regs., § 2402, subds. (c), (d).) Finally, the regulation explains that the foregoing circumstances "are set forth as general guidelines; the importance attached to any circumstance or combination of circumstances in a particular case is left to the judgment of the panel." (Regs., § 2402, subds. (c), (d).) The Governor's power to review a decision of the Board is set forth in article V, section 8, subdivision (b) of the California Constitution.[FN17]
>
> ---
>
> FN13. Petitioner's parole suitability is governed by Title 15, section 2402, which we addressed in *Rosenkrantz, supra,* 29 Cal.4th 616, 128 Cal.Rptr.2d 104, 59 P.3d 174—a discussion excerpted in substantial part below. In the companion case of *Lawrence, supra,* 44 Cal.4th 1181, 82 Cal.Rptr.3d 169, 190 P.3d 535, the inmate's parole suitability is governed by Title 15, section 2281, which provides parole consideration criteria and guidelines for murders committed prior to November 8, 1978. The two sections are identical.
>
> FN14. These factors include "the circumstances of the prisoner's social history; past and present mental state; past criminal history, including involvement in other criminal misconduct which is reliably documented; the base and other commitment offenses, including behavior before, during and after the crime; past and present attitude toward the crime; any conditions of treatment or control, including the use of special conditions under which the prisoner may safely be released to the community; and any other information which bears on the prisoner's suitability for release. Circumstances which taken alone may not firmly establish unsuitability for parole may contribute to a pattern which results in a finding of unsuitability." (Regs., § 2402, subd. (b).)
>
> FN15. Unsuitability factors are: (1) a commitment offense carried out in an "especially heinous, atrocious or cruel manner"; (2) a "[p]revious [r]ecord of [v]iolence"; (3) "a history of unstable or tumultuous relationships with others"; (4) "[s]adistic [s]exual [o]ffenses"; (5) "a lengthy history of severe mental problems related to the offense"; and (6) "[t]he prisoner has

engaged in serious misconduct in prison or jail." (Regs., § 2402, subd. (c)(1)-(6).) This subdivision further provides that "the importance attached to any circumstance or combination of circumstances in a particular case is left to the judgment of the panel." (Regs., § 2402, subd. (c).)

Factors supporting a finding that the inmate committed the offense in an especially heinous, atrocious, or cruel manner include the following: (A) multiple victims were attacked, injured, or killed in the same or separate incidents; (B) the offense was carried out in a dispassionate and calculated manner, such as an execution-style murder; (C) the victim was abused, defiled, or mutilated during or after the offense; (D) the offense was carried out in a manner that demonstrates an exceptionally callous disregard for human suffering; and (E) the motive for the crime is inexplicable or very trivial in relation to the offense. (Regs., § 2402, subd. (c)(1).)

FN16. Suitability factors are: (1) the absence of a juvenile record; (2) "reasonably stable relationships with others"; (3) signs of remorse; (4) a crime committed "as the result of significant stress in [the prisoner's] life"; (5) battered woman syndrome; (6) the lack of "any significant history of violent crime"; (7) "[t]he prisoner's present age reduces the probability of recidivism"; (8) "[t]he prisoner has made realistic plans for release or has developed marketable skills that can be put to use upon release"; and (9) the inmate's "[i]nstitutional activities indicate an enhanced ability to function within the law upon release." (Regs., § 2402, subd. (d)(1)-(9).)

FN17. Article V, section 8 subdivision (b) of the California Constitution provides in full: "No decision of the parole authority of this State with respect to the granting, denial, revocation, or suspension of parole of a person sentenced to an indeterminate term upon conviction of murder shall become effective for a period of 30 days, during which the Governor may review the decision subject to procedures provided by statute. The Governor may only affirm, modify, or reverse the decision of the parole authority on the basis of the same factors which the parole authority is required to consider. The Governor shall report to the Legislature each parole decision affirmed, modified, or reversed, stating the pertinent facts and reasons for the action."

The statutory procedures governing the Governor's review of a parole decision pursuant to article V, section 8 subdivision (b), are set forth in Penal Code section 3041.2, which states: "(a) During the 30 days following the granting, denial, revocation, or suspension by a parole authority of the parole of a person sentenced to an indeterminate prison term based upon a conviction of murder, the Governor, when reviewing the authority's decision pursuant to subdivision (b) of Section 8 of Article V of the Constitution, shall review materials provided by the

> parole authority. [¶] (b) If the Governor decides to reverse or modify a parole decision of a parole authority pursuant to subdivision (b) of Section 8 of Article V of the Constitution, he or she shall send a written statement to the inmate specifying the reasons for his or her decision."

> "[T]he governing statute provides that the Board *must* grant parole *unless* it determines that *public safety* requires a lengthier period of incarceration for the individual because of the gravity of the offense underlying the conviction. (Pen.Code, § 3041, subd. (b).) And as set forth in the governing regulations, the Board must set a parole date for a prisoner unless it finds, in the exercise of its judgment after considering the circumstances enumerated in section 2402 of the regulations, that the prisoner is unsuitable for parole. Accordingly, parole applicants in this state have an expectation that they will be granted parole unless the Board finds, in the exercise of its discretion, that they are unsuitable for parole in light of the circumstances specified by statute and by regulation." (*Rosenkrantz, supra*, 29 Cal.4th at p. 654, 128 Cal.Rptr.2d 104, 59 P.3d 174, Italics added.)[27]

Judicial review of a decision denying parole is "extremely deferential."[28] It is through this lens that the decision of the Stanislaus County Superior Court is reviewed. Based upon the record before it, applying *Rosenkrantz, Dannenberg, Lawrence*, and *Shaputis*, this court cannot say that the decision of the Stanislaus County Superior Court was contrary to, or involved an unreasonable application of California law or was based on an unreasonable determination of the facts in light of the evidence.[29] Neal is not entitled to relief on his second ground.

## V. CONCLUSION AND ORDER

Neal is not entitled to relief on any grounds raised in the petition. Accordingly,

**IT IS ORDERED** that the Petition for a writ of habeas corpus under 28 U.S.C. § 2254 is **DENIED**.

---

[27] *Shaputis*, 190 P.3d at 582-83 (emphasis in the original).

[28] *Rosenkrantz*, 59 P.3d at 210.

[29] *Hayward*, 603 F.3d at 563.

**IT IS FURTHER ORDERED** that the court declines to issue a Certificate of Appealability.[30] Any further request for a Certificate of Appealability must be addressed to the Court of Appeals.[31]

The Clerk of the Court will please enter final judgment accordingly.

Dated: June 7, 2010.

/s/ John W. Sedwick
United States District Judge

---

[30] 28 U.S.C. § 2253(c); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (a COA should be granted where the applicant has made "a substantial showing of the denial of a constitutional right," *i.e.*, when "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further.") (internal quotation marks and citations omitted).

[31] *See* Fed. R. App. P. 22(b); Ninth Circuit R. 22-1.